IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-00933-MEH

HANAN ALI, and
LENA DERANI,

    Plaintiffs,

v.

JERUSALEM RESTAURANT, INC.,

    Defendant.

---

### ORDER ON MOTION FOR SUMMARY JUDGMENT

---

**Michael E. Hegarty, United States Magistrate Judge**.

    Before the Court is Defendant Jerusalem Restaurant, Inc.'s Motion for Summary Judgment Regarding Plaintiff Hanan Ali [filed January 9, 2015; docket #51]. The motion is fully briefed, and the Court finds that oral argument would not materially assist the Court in its adjudication. For the reasons described below, Defendant's Motion is **denied**.

### FINDINGS OF FACT

    The Court finds the following facts, viewed in the light most favorable to Plaintiff Hanan Ali, who is the non-moving party in this matter. Ms. Ali was employed as a waitress by Defendant Jerusalem Restaurant (the Restaurant) from July 2012 until August 2013. (Ex. C, Ali Depo., 45:22-46:1) The Restaurant has been owned and operated by Said Wahdan and Urayb Wahdan since 1978. (Ex. B, Affidavit of Said Wahdan, ¶ 2.) Ms. Ali was originally scheduled to work four shifts a week: Monday, Wednesday, Friday, and Sunday. (Ali Depo., 51:16-20) The Restaurant's timecards for Ms. Ali indicate that Ms. Ali missed four shifts in February and March 2013, three shifts in April 2013, and two shifts in June 2013. (Ex. E, Ali Timecards.) Although Ms. Ali admitted in her

deposition that she missed shifts, she has submitted an affidavit averring that she never missed a shift, she only traded shifts with other employees. (Ex. 1, Second Attestation of Hanan Ali, ¶ 3.) Ms. Ali also admitted in her deposition that she missed (or traded) shifts without discussing the schedule change with management. (Ali Depo., 99:7-9; 107:21-110:3.)

In May 2013, Ms. Ali told Mrs. Wahdan she was pregnant. (*Id*., 99:10-14.) According to Ms. Ali, Mrs. Wahdan called her a "f***ing a**hole," left, and returned to congratulate her. (*Id*., 99:18-20.) Mrs. Wahdan has stated that after Ms. Ali informed her she was pregnant, Ms. Ali said that working at the Restaurant was too difficult and she was giving her two-week notice. (Ex. D, Affidavit of Urayb Wahdan, ¶ 14.) Mrs. Wahdan also stated that she pled with Ms. Ali to continue working and told Ms. Ali she would accommodate her schedule (Ms. Ali allegedly having requested not to work on Sundays). (*Id*., ¶¶ 14-15.) Ms. Ali disputes Mrs. Wahdan's recitation of the May 2013 conversation. Ms. Ali testified as follows regarding working on Sundays: "I told [Mrs. Wahdan] she doesn't have enough [staff] on Sunday and it's busy. So I asked her if she could hire more people [. . .] and she said, Okay [. . . ] I'll think about it. And then [. . . ] I told her that it's okay for me to work weekdays rather than Sunday." (Ali Depo. 111:7-14.) Ms. Ali explained that Sundays were a difficult shift because she did not get a break, so she "asked Mrs. Wahdan if she could switch [her] to weekdays [instead of] Sunday." (*Id*. at 112:7-14.) Ms. Ali's shifts were reduced to three days a week, with her last Sunday shift scheduled on May 5, 2013. (Ali Timecards, p. 19.)

Due to a family emergency, Mr. and Mrs. Wahdan left the country on June 22, 2013. Mr. Wahdan states that on June 7, 2013, he asked if Plaintiff could work more shifts due to his impending departure and the upcoming busy season. (Affidavit of Said Wahdan, ¶ 20.) Ms. Ali denies that conversation occurred. (Second Attestation of Ms. Ali, ¶ 5.) Ms. Ali missed scheduled

2

shifts on June 10, June 12, and June 17, 2013, but worked her three scheduled shifts the last week in June. (Ali Timecards, pp. 22-25.) According to Mazen Alaswad, the owners' son-in-law, Ms. Ali did not report for work on July 1 or July 3. (Affidavit of Mazen Alaswad, Ex. I, ¶¶ 19-20.) When Mr. Alaswad asked Ms. Ali why she had not reported for work, Ms. Ali told him that she only wanted to work on Fridays. (*Id.* ¶ 21.) Ms. Ali denies that she told Mr. Alaswad she only wanted to work on Fridays; instead, she states that Mr. Alaswad told her on June 24, 2013 that she was only scheduled to work on Fridays. (Second Attestation of Ms. Ali, ¶¶ 2-3.) Ms. Ali also states she never missed a shift, except once in August when she went to a job interview because the Restaurant was not giving her enough shifts. (*Id.*)

Ms. Ali's last shift at the Restaurant was on August 2, 2013. (Ali Timecards, p.26.) That same day, a customer complained in writing on a receipt about Ms. Ali's service. (Ex. L, 8/2/13 Receipt.) Ruba Wahdan, also a waitress as the Restaurant, states that the customer also brought the complaint to her attention. (Ex. H, Affidavit of Ruba Wahdan, ¶ 17.) Ms. Wahdan attempted to speak with Ms. Ali about the customer's comment, but Ms. Ali left the restaurant, complaining of pain and stating she had to go the emergency room. (*Id.* at ¶¶ 18-19.) Ms. Ali acknowledges that she did not show up to her next scheduled shift because she had a job interview, and then she stopped showing up for any shifts at the Restaurant because she had a new job. (Ali Depo., 45:22-46:8.)

Ms. Ali initially brought this action against the Restaurant with three co-Plaintiffs: Winta Ayele, Helen Belay, and Lena Derani. (Docket #1.) Ms. Ayele and Ms. Belay voluntarily dismissed their claims. (Docket ## 21, 22.) Ms. Ali brings claims for pregnancy discrimination and unlawful failure to pay overtime in violation of the Fair Labor Standards Act (FLSA) 29 U.S.C. § 201 and the

Colorado counterpart, C.R.S. § 8-6-118. (Docket #10.) Co-Plaintiff Ms. Derani also brings a claim for breach of contract.

The Restaurant moves for summary judgment on grounds that there is no evidence of pregnancy discrimination and the Restaurant has submitted legitimate, non-discriminatory reasons for Ms. Ali working fewer shifts; additionally, the Restaurant contends the FLSA claim is moot because the Restaurant submitted an offer of judgment to fully compensate Ms. Ali for lost wages. The Restaurant has filed a separate motion for summary judgment against Ms. Derani. (Docket # 52.)

## STANDARD OF REVIEW

Summary judgment serves the purpose of testing whether a trial is required. *Heideman v. South Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). The Court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial responsibility of providing to the Court the factual basis for its motion and identifying the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which reveal that there are no genuine issues as to any material facts, and that the party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). However, the non-moving party has the burden of showing that there are issues of material fact to be determined. *Id.* at 324.

That is, if the movant properly supports a motion for summary judgment, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts

showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Hysten v. Burlington Northern & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). These specific facts may be shown "'by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves.'" *Pietrowski v. Town of Dibble*, 134 F.3d 1006, 1008 (10th Cir. 1998) (quoting *Celotex*, 477 U.S. at 324). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, *i.e.*, the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. v. PepsCo, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

## ANALYSIS

A.  Pregnancy Discrimination

The Pregnancy Discrimination Act (PDA) requires employers to treat pregnant employees the same as nonpregnant employees for employment-related purposes. 42 U.S.C. § 2000e(k); *Anderson v. Cato Corp.*, 444 F. App'x 280, 283 (10th Cir. 2011). PDA claims proceed in much the same manner as other Title VII claims of disparate treatment. *See E.E.O.C. v. Ackerman, Hood & McQueen, Inc.*, 956 F.2d 944, 947 (10th Cir. 1992). To prevail under Title VII, a plaintiff must show, through either direct or indirect evidence, that the discrimination complained of was intentional. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1192 (10th Cir. 2000). The Court first addresses whether Ms. Ali has produced direct evidence of pregnancy discrimination.

1.  Direct Evidence

"[T]he term 'direct evidence' ... refers to a narrow category of 'evidence, which if believed, proves the existence of a fact in issue without inference or presumption.'" *Twigg v. Hawker*

5

*Beechcraft Corp.*, 659 F.3d 987, 1000 n. 8 (10th Cir. 2011) (emphasis added) (quoting *Hall v. U.S. Dep't of Labor*, 476 F.3d 847, 854 (10th Cir. 2007)). Direct evidence of employment discrimination is "'usually impossible to obtain,'" and is generally limited to "'an admission by the decisionmaker such as "I fired him because he was too old." ' " *Twigg*, 659 F.3d at 1000 n.8. (quoting *Ostrowski v. Atl. Mut. Ins. Cos.,* 968 F.2d 171, 181 (2d Cir. 1992)). "A statement that can plausibly be interpreted two different ways – one discriminatory and the other benign – does not directly reflect illegal animus, and, thus, does not constitute direct evidence." *Hall*, 476 F.3d at 855 (quotation omitted).

Ms. Ali testified at her deposition that when she told Mrs. Wahdan she was pregnant, Mrs. Wahdan responded: "You f***ing a**hole, and she left. And then she came back and said, Oh honey, congratulations." (Ali Depo., 99:18-20.) Despite Mrs. Wahdan's use of profanity upon learning of Ms. Ali's pregnancy, Ms. Ali admits that "no one said anything that would amount to pregnancy discrimination while I was working at the restaurant." (Ex. M, Ms. Ali's Responses to Interrogatories, Response No. 4.) While Mrs. Wahdan's statement, if true, implies she was upset that Ms. Ali was pregnant, she then congratulated Ms. Ali, making plausible an interpretation that the statement was benign, and not discriminatory. *See Hall*, 476 F.3d at 855.

In any event, comments in the workplace that reflect personal bias do not qualify as direct evidence of discrimination unless the plaintiff shows the speaker had decision-making authority and acted on his or her discriminatory beliefs. *Ramsey v. City & Cnty. of Denver*, 907 F.2d 1004, 1008 (10th Cir. 1990). Here, the parties dispute (1) whether Ms. Ali unilaterally reduced her hours or the Restaurant reduced them; and (2) whether Mrs. Wahdan, who was out of the country when Ms. Ali's shifts were reduced to one a week, was involved in the decision to reduce her hours. Additionally, discriminatory statements do not qualify as direct evidence if the context or timing of the statements

is not closely linked to the adverse decision. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1118 (10th Cir. 2007). Ms. Ali's shifts were not significantly reduced until July 2013, over a month after Mrs. Wahdan learned of Ms. Ali's pregnancy and responded with an expletive directed at Ms. Ali. Thus, even assuming Mrs. Wahdan's statement was discriminatory, it is not sufficiently linked to the alleged adverse decision to reduce Ms. Ali's hours to qualify as direct evidence of discrimination.

Finally, the Court notes that Ms. Ali essentially concedes that her claim is not based on direct evidence of discrimination when she states, in response to an interrogatory about instances of alleged discrimination, "[m]y claim is based on the fact that shortly after I told Ms. Urayb Wahdan that I was pregnant, my hours were reduced so that I was forced to find other work." (Ex. M, Ms. Ali's Responses to Interrogatories, Response No. 4.)

Accordingly, the Court finds no direct evidence of intentional discrimination, and Ms. Ali must rely on circumstantial evidence of discrimination to survive the Motion for Summary Judgment.

2.   Indirect Evidence

A plaintiff who lacks direct evidence of intentional discrimination may use the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* approach, the plaintiff must first make out a prima facie case of discrimination by showing that (1) Plaintiff belongs to a protected class; (2) she suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination. *Barlow v. C.R. England, Inc.*, 703 F.3d 497, 505 (10th Cir. 2012). If the plaintiff establishes a prima facie case, the burden shifts to the employer who must prove a legitimate, nondiscriminatory reason for the adverse employment action. *Id*. at 1211. Finally, once

the employer has satisfied this burden of production, the plaintiff can avoid summary judgment by identifying evidence that could support a reasonable jury's concluding that the employer's proffered rationale is a mere pretext for discrimination. *Tabor v. Hilti, Inc.*, 703 F.3d 1206, 1216 (10th Cir. 2013).

    a.  Prima Facie Case

The Restaurant argues Ms. Ali has failed to provide sufficient evidence to make out the second and third elements of a prima facie case of discrimination. First, the Restaurant contends Ms. Ali did not suffer an adverse employment action because she requested a reduction of hours and then unilaterally reduced her hours before quitting. The Restaurant next contends there are no genuine issues of material fact to create an inference of discrimination.

With regard to the adverse action element, the Restaurant submits ample evidence supporting its position that Ms. Ali requested fewer shifts, was consistently late for work, and eventually stopped showing up for shifts. However, Ms. Ali also submits evidence supporting her position that the Restaurant reduced her hours until she was unable to earn enough money and was forced to find a new job. Specifically, Ms. Ali provides deposition testimony and an affidavit titled "Second Attestation of Ms. Ali" as evidence that (1) she never requested fewer shifts, and (2) she did not work fewer shifts of her own volition; instead, she did not show up for shifts because she was not scheduled to work. (Second Attestation of Hanan Ali, ¶¶ 1-4, 5; Ali Depo. 112:16-25.) Ms. Ali's deposition testimony and sworn statements raise a factual dispute as to whether the Restaurant reduced her shifts to the point of a constructive discharge. Accordingly, Ms. Ali has sufficient evidence of an adverse action to raise an issue of material fact as to the second element of her prima facie case.

Next, the Restaurant argues that there are no circumstances giving rise to discrimination to establish the third element of a prima facie case. The Restaurant submits affidavits from other employees who state that the Restaurant accommodated their pregnancies and did not discriminate against them. (*See* Ex. N, Affidavit of Yodit Gebru ; Ex. O, Ms. Ayele Depo.; Ex. P, Ms. Belay Depo.; Ex. Q, Affidavit of Kidist Negash; Ex. R, Affidavit of Selamawit Habtemaryam; Ex. S, Affidavit of Intisar Abdel Galil; Ex. U, Affidavit of Halima Amin.) Ms. Ali counters that her co-Plaintiff, Lena Derani, was discriminated against based on her pregnancy, and that this case originally had two other Plaintiffs.[1] At this juncture, evidence of discrimination against other employees is unnecessary because evidence of remarks made by Mrs. Wahdan together with the sequence of events are sufficient to overcome a summary judgment motion. *See Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir. 2005) (Plaintiffs can establish evidence of the third prong in various ways, such as "actions or remarks made by decision makers," or "more generally, upon the timing or sequence of events leading to [P]lantiff's termination.").

In addition to Mrs. Wahdan's use of expletives upon learning of Ms. Ali's pregnancy, Ms. Ali testified that she thought Mrs. Wahdan said former Plaintiff Helen Belay "talked [us] into getting pregnant." (Ali Depo., 99:21-25.) Mrs. Wahdan's husband was responsible for scheduling employees' shifts. According to Ms. Ali, her shifts were reduced by one day a week until she was told by the owners' son-in-law on June 24, 2013 that she was only scheduled to work on Fridays. (Second Attestation of Ms. Ali, ¶¶ 1-4, 5; Ali Depo. 112:16-25.) The one-shift per week scheduling occurred about two months after Ms. Ali told Mrs. Wahdan she was pregnant. Despite the Restaurant's ample evidence supporting a finding it did not reduce Ms. Ali's shifts, based on the

---

[1] The Restaurant points out that the two former Plaintiffs testified that they were not discriminated against based on their pregnancies, to which Ms. Ali responds that a jury could infer that the former Plaintiffs were forced or coerced by the Restaurant into dismissing their claims. The former Plaintiffs testified that they voluntarily dismissed their claims.

evidence presented by Ms. Ali, a reasonable fact-finder could infer that Mrs. Wahdan was biased against pregnant employees, and that she was indirectly responsible – through influencing her husband and/or son-in-law– for reducing Ms. Ali's shifts to the point of constructive discharge.[2]

Accordingly, Ms. Ali has provided sufficient evidence to establish a prima facie case of discrimination, and the burden shifts to the Restaurant to offer a nondiscriminatory reason for the alleged constructive discharge.

### b. Non-discriminatory Reason

The Restaurant proffers that Ms. Ali worked fewer shifts leading up to the day she quit because she unilaterally decided to do so. In support of its position, the Restaurant submits timecards reflecting nine instances of missed shifts prior to July 2013; two in February 2013; two in March 2013; three in April 2013; and two in June 2013. (Ex. E, Ali Timecards.) Ms. Ali admitted in her deposition that she missed some shifts. (Ali Depo., 99:7-9; 107:21-110:3.) Ms. Ali reported only working on Fridays in July. The Restaurant explains that Mr. Wahdan, who is responsible for creating the schedule, left the country on June 22, 2013 for a family emergency and did not change the schedule when Ms. Ali was supposed to work three days a week. (Affidavit of Said Wahdan, ¶¶ 23-24.) Mr. Wahdan also states that the Restaurant is extremely busy in the summer and usually

---

[2] The Court disagrees with the Restaurant's position that Ms. Ali cannot make out a prima facie case because she had not proffered evidence that similarly situated employees were treated differently from her. First, in this particular instance, such evidence would amount to evidence that the Restaurant did not reduce the hours of every employee, including those who were not pregnant. Such evidence would have little meaning. Moreover, the Restaurant's reliance on *Fejes v. Gilpin Ventures, Inc*., 960 F. Supp. 1487 (D. Colo. 1997) is misplaced. In that case, the court determined that Plaintiff did not provide sufficient evidence for a prima facie pregnancy discrimination claim because she did not proffer evidence that any nonpregnant employees who took medical leave were treated differently than her. *Fejes* was decided under an older, four-part test from the original *McDonnell Douglas*, which the Tenth Circuit has replaced with a three-part test articulated by the Supreme Court in *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). *See Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1173 (10th Cir. 2005). Different variations of this test have been applied in the Tenth Circuit, but under all of these tests, the prima face burden is "slight." *See Tabor,* 703 F.3d at n.4.

schedules more wait staff per shift. (*Id.* ¶ 25.) Mr. Wahdan asked Ms. Ali on June 7, 2013 if she could work more shifts due to his impending absence and the upcoming busy season, and Ms. Ali responded she would think about it. (*Id.* ¶ 20.) A timecard indicates that Ms. Ali then missed her next scheduled shift on June 10, 2013 and again missed a shift on June 17, 2013. (*Id.* ¶ 21-22.) According to Mazen Alaswad, the owners' son-in-law, Ms. Ali did not report for work on July 1 or July 3. (Ex. I, Affidavit of Mazen Alaswad, ¶¶ 19-20.) When he asked her why she had not reported for work, Ms. Ali told him that she only wanted to work on Fridays. (*Id.* ¶ 21.) Ms. Ali proceeded to work only on Fridays through July until she left her shift early on August 2, 2013, and then stopped showing up for her shifts.

In light of the foregoing evidence, the Restaurant has sufficiently met its burden of providing a legitimate, non-discriminatory reason for Ms. Ali's reduced shifts leading up to her last day of employment. The burden shifts back to Ms. Ali to identify evidence that could support a conclusion by a reasonable jury that the Restaurant's proffered rationale is a mere pretext for discrimination. *See Tabor*, 703 F.3d at 1216. In this case, because the Restaurant's rationale is essentially a denial of the adverse employment action, Ms. Ali's showing of circumstances leading to an inference of discrimination under the third prong of the prima facie analysis also serves to show that the Restaurant's rationale may be pretextual. The issue of material fact as to the discrimination claim is whether the Restaurant or Ms. Ali reduced her hours; there is sufficient evidence for a trier of fact to reasonably reach either conclusion.

B.      Failure to Pay Overtime

The Restaurant contends that its offer of judgment pursuant to Fed. R. Civ. P. 68 makes Ms. Ali whole on her unlawful failure to pay overtime claim, rendering it moot. Ms. Ali counters that

the offer of $190.58 in unpaid overtime, plus any costs, does not fully compensate her because it specifically excludes attorneys fees.

In interpreting the Supreme Court's holding in *Genesis Healthcare Corp. v. Symczyk*, 133 S.Ct. 1523 (2013), this Court held that a Rule 68 offer of judgment tendering complete relief eliminates the "case or controversy" of an action and, thus, justifies dismissal under Fed. R. Civ. P. 12(h)(3). *Perez v. Pinon Mgmt., Inc.*, No. 12-cv-00653-RM-MEH, 2013 WL 9853508, at *9 (D. Colo. July 1, 2013). In an action brought to enforce the FLSA, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant." 29 U.S.C. § 216(b). "Payment of attorney fees and costs to a prevailing party in an FLSA action is *mandatory*." *Wright v. U–Let–Us Skycap Servs., Inc.*, 648 F.Supp. 1216, 1218 (D. Colo. 1986) (emphasis in original). In *Perez*, this Court found that Plaintiff could not avoid mooting her claim simply because Defendant's offer of judgment in that case, which included "a reasonable attorney's fee," did not account for the possibility that Plaintiff could receive a discretionary incentive award following a settlement or judgment at the collective action phase. Here, the Restaurant's Rule 68 offer excludes attorney's fees despite the mandatory requirement to pay such fees to a prevailing party in a FLSA action. While Ms. Ali's FLSA claim for damages is only a small portion of the potential overall damages in this case, and likely does not carry significant attorney's fees, the Restaurant's Rule 68 offer cannot be one for complete relief where it is completely devoid of any attorney's fee.

## **CONCLUSION**

For the reasons stated above, Defendant Jerusalem Restaurant, Inc.'s Motion for Summary Judgment Regarding Plaintiff Hanan Ali [filed January 9, 2015; docket #51] is DENIED.

Dated at Denver, Colorado, this 23rd day of March, 2015.

                                        BY THE COURT:

                                        *Michael E. Hegarty*

                                        Michael E. Hegarty
                                        United States Magistrate Judge